v. Paul Henry Good morning, may it please the court. I'm Robert Herrick. I'm here for Paul Henry. Mr. Henry entered a conditional guilty plea to two counts of sexual exploitation of a child. The plea was conditional in the sense that he reserved the right to appeal the denial of two motions that he had filed before he entered his plea. The first was a motion to eliminate, the second was a motion to suppress. I'd start with the motion to eliminate, and I would suggest that the motion to eliminate that was filed here actually presents a question of first impression for this circuit. And the question is basically this, does someone who has been charged with sexual exploitation of a minor have a right to raise as an affirmative defense a reasonable mistake of age defense? And I think it's probably worthwhile to point out just how specific and how narrow the defense that he was proposing actually was. So what he was proposing in his motion to eliminate was essentially to take upon the burden for himself, the burden of establishing by a clear and convincing evidence that not only did he not have subjective knowledge or personal knowledge of the age of the individual who the age of the individual. So it's actually quite a quite a limited affirmative defense that's at play here. And it's an affirmative defense that actually derives from a case from the Ninth Circuit. Now I indicated that this is a question of first impression for this court, it's not a question of first impression among other courts or a number of other courts that have ultimately How do you deal with excitement video? Excitement video, I take to be obviously it was construing a different statute. I take excitement video to make it clear that it understands the statute to essentially relieve the government of any obligation to come forth with evidence of knowledge as an element of the offense. And I don't think it goes any farther than that. So I don't think it I don't think it on its on its terms precludes the precludes the the recognition of an affirmative defense. Before you get into the reason for concluding that he has the right to this defense, I just want to understand what argument you're actually making to us, what argument you made below. He isn't, just so I'm clear, you're not, you're concluding, you're arguing that there is a right to make this defense and that we should engraft that right into the statute even though the statute on its own does not provide for that defense. Is that right? That's correct. Okay, if we concluded we had no authority to engraft it on, the conclusion that might follow from that is the statute's unconstitutional. Are you arguing that? I'm not arguing necessarily that the statute's unconstitutional. Okay, so what happens, so what so even if we grant the contention that there's a constitutional problem with the statute, but we conclude there's no plausible remedy of the type you're suggesting, which is that we then engraft this defense, do you lose? Well, no, not necessarily. How do you win? I win, I win basically because I think that this court is entitled to construe the statute in a way that's consistent. If we conclude we're not, if we conclude we're not, you are not asking this court in that instance to invalidate the statute? I'm not asking, I'm not asking simply because it was not the argument that was raised below, I'm not asking for sort of a facial challenge to the statute itself. What I'm suggesting is that this court does have the power, and it's the power that was recognized by the Ninth Circuit, to go ahead and essentially recognize an affirmative defense. And so you're saying that that's in the statute, it's, in other words, just as a constitutional avoidance matter, we can find that in the statute? That's the argument? That's correct, Your Honor. I think the court can understand the statute in a way that avoids the constitutional difficulty. So you're saying if we find the statute unconstitutional as written, but we conclude that it is up to Congress, not the court, to fix the statute, you should lose? I would almost never answer yes to that question, Your Honor. Fair enough. But what I would suggest is that you are not in a position where your hands are tied in that manner. And I think that the approach that the Ninth Circuit took was a perfectly plausible approach. It's one that does wind up and wind up being used in various circumstances. Well, I'm asking a slightly different question, not whether our hands are tied. I'm asking what are you, how many arrows are in your quiver? In other words, are you asking us if we conclude that you can't go the Ninth Circuit route in terms of engrafting it into the statute? Are you asking us then to invalidate the statute on First Amendment grounds? I haven't made that argument, frankly, because I think the argument is broader than it needs to be. I think as a general question of advocacy and jurisprudence, it behooves both the advocate and the court to take the path of least resistance, to do as little altering of the statute itself as required to bring a statute into compliance with the constitutional obligations or constitutional requirements. Back to the merits, your argument is essentially an overbreath argument. You're saying that if there isn't this defense, it will deter people from making legal pornography. Right, I think I frame it more as a substantial chilling of the right to create. So we have to sort of propose the hypothesis of how going to make such an expression would be chilled or not chilled. Don't a lot of the state laws criminalize having sex with a minor and provide no, I didn't know the age, defense? Oh, I think it's certainly the case, your honor, that there are a lot of statutory... So isn't there already some refrigeration here, some chilling of the, some reason for someone to be cautious, no matter how, whether even if Congress had never written the statute? I think there's a significant difference, your honor, because if you were to look at the statutory rape statutes and penalties really throughout the country, what you wind up seeing is that it's very rare that there's a minimum mandatory sentence, very rare that it would be a minimum mandatory sentence of this degree, a 15-year minimum mandatory sentence. So you're saying the penalties here are greater, but there are still penalties for the other. So that means logically what we're assessing is the marginal increase in chilling by this statute. I think you could say that, but I think it's important to keep in mind about the statutory rape charges is that to the extent that almost every single one of them that exists has as a possibility a sentence of zero years in prison. It makes it possible for an individual to be found guilty without facing substantial amounts of prison time. Is the conduct covered by this statute, aside from the production element, coterminous with statutory rape? In other words, the sum of the material that could be produced here, though qualifying as impermissible child pornography, encompass activity that would not be covered by the statutory rape provisions? Yes. The example that I would give would be if there's a third party who's actually producing the materials and it's two other individuals that are actually engaged. The production of just images of a child in sexual poses or whatever would count, correct? I think that's right. Would that be covered by a statutory rape provision? Well, it wouldn't because statutory rape requires penetration. So there's a substantial amount of conduct in this statute just is outside the ambit of the statutory rape laws. I would agree with that. Go back to take this area, put statutory rape to one side. How does the chilling actually work? For example, does it chill someone from making some particular movie, pornographic movie that they want to make? I think it does. Well, does it? Or does it just chill them from using an actor or actress that they're not sure about? Well, no. I think what we're talking about here, again, and I'd focus just on how demanding this affirmative defense really is, what we're talking about is an individual, a hypothetical, reasonable individual who intends to create a sexually explicit video with an 18-year-old actress or actor. That same person could ask for a birth certificate, ask for a driver's license. And what I'm suggesting is that he could wind up looking at the draconian's penalty for making a mistake here, even if he's being actively deceived, and simply say, I'm not going to go ahead and do that. I've done everything I can. I am simply not, I'm not reasonably able to ascertain this person's age. Therefore, I will not be able to do activity that would be protected by the First Amendment. I thought the other circuits that had said there's no First Amendment right to a mistaken defense, I thought part of their reasoning was the federal law already requires someone who makes this type of video to verify the age of the people involved. Well, and I think that actually points to a very significant flaw in the reasoning of the majority opinions here. And I think that if you were to read the majority viewpoints here, what you wind up realizing is that they are basing their analysis on a model of the production of the era of the smartphone. They basically talk about regulatory schemes. They talk about the profit motive. They talk about it as though it's business people that are producing these materials. What I would suggest is that nowadays there's an awful lot of child pornography, adult legitimate pornography, that is produced by simply two consenting adults who have a relationship. But the statute still applies to them. You know, I looked into the statute and the statute is a little bit difficult to jibe with that situation because it talks about places of business. It seems clearly targeted towards businesses rather than towards individuals who are doing this in the privacy of their own home. But all that being said, I think it illuminates a very significant problem with the reason of the majority opinions. And that is that there's an assumption that the alleged victims in these cases are not available to the prosecution. And what that means is that the prosecutors have to go ahead and try to prove their cases by essentially looking at body features of the individuals who are appearing in the videos themselves. What the courts that are dismissive of the chilling effect are saying is there's already an implicit built-in safe haven for people who are making reasonable mistakes of age. What I'm arguing is that once we start talking about smartphones, well that whole idea that the victims are unknown goes out the window. And it goes out the window because we have these digital paths. We have a digital chain that can actually lead back to the source of the images in the first place. But also, as in this very case, can wind up getting a telephone that has text phone numbers, can have cell phone numbers. It makes it possible to be able to go and ascertain the age of individuals in a way that was not happening before. Can I just understand how the verification provision, the other verification provision works? If I understand the scheme, it's just an additional obligation given the lack of a mistake of age defense. Because whether you verify, you do that, comply with that verification provision or not is an irrelevancy. Because if, in fact, the person is underage, notwithstanding that you checked an ID or something, you're still out of luck, guilty. That's right. And the maximum penalty for that is a five-year penalty. There's a separate penalty for failing to do the verification? That's correct. I see. That's my understanding of how the regulations work. So for your chilling argument to work, we'd have to conclude not just that there are some people who don't produce some videos that otherwise would be produced because of their worry about the age of the person that they'd be filming, but that there has to be a substantial amount of that relative to the plainly legitimate sweep of the law. Right. So how am I supposed to make that calculation? I can grant that there could be some cautious people who would refrain from doing it. There are also people who would go to the ends of the earth to get a birth certificate that they believed in. And most of the time, they'd be right, probably, with that birth certificate. So they'd go ahead. And on the other side, there's a real legitimate governmental interest in making sure that young kids who are being trafficked and want to pass themselves off are unsuccessful in doing so. So putting that all together, how am I supposed to make a judgment that this is substantially overrun? Well, my suggestion is to look at the Ninth Circuit's analysis. What the Ninth Circuit has done is actually taken a nuanced view where it reflects the fact that there are competing constitutional values here and tries to create what is really quite limited in terms of an those people who are not just reckless about the paperwork that they're asking for, but who are really actively being deceived about their age, that simply don't have a reasonable possibility of correctly ascertaining this, that they're not going to prison for 15 years. If there are no further questions. Thank you, Mr. Herr. Ms. McGoy? I'm Margaret McGoy for the United States. Before I get to the constitutional question, and I will do that momentarily, I simply want to point out what the record in this case is, as I understand it. I understand the defendant to have conceded in the district court and in this court that the statute does not require knowledge of the age of the victim to be an element of the offense. That is something that this court has recently said in Incarnacion Luis, very specific ly. I understand the defendant to have conceded below and also in this court that with the exception of the Ninth Circuit, every other circuit that has considered this issue has concluded that mistake of age is not a defense to the charge. There are at least four or five other reasons to go along with those concessions. One is, as Judge Kayada pointed out in excitement video, which was decided six years after the Ninth Circuit case on which the defendant relies. And in excitement video, the Supreme Court itself contrasted the legislative history of the statute that punishes possession of child pornography with the legislative history of the statute that punishes production of child pornography and pointed out that in each iteration of the production statute, knowledge was omitted. A third reason to affirm the defendant's concessions is this strict liability statute in which a mistake of age is not an issue. Let me get to the chilling effect argument, the First Amendment. There is absolutely nothing in this record that suggests that any producer of adult pornography has been or will be chilled by the lack of a mistake of age defense in this case. The defendant himself could have produced evidence that he produced on his iPhone both child pornography and adult pornography and he could have testified himself that his production was chilled. How does that compare to the other First Amendment overbreath chilling cases that the Supreme Court has decided? It's not clear to me that they do always require data as opposed to them hypothesizing about how human and economic behavior occurs. Am I correct in that? You are correct, but may I back up from that and talk about the standard that applies to First Amendment overbreath challenges, facial challenges, because it's very much unfavorable to the defendant. It requires a balancing of the competing societal interests in one hand, the interest of protecting children against exploitation of minors, and the other, the interest of legitimate producers of adult pornography from producing that It says that the overbreath must be substantial both in absolute terms and in relationship to the legitimate sweep of the statute. And then we come back to what the Supreme Court has said is the surpassing interest of not only the federal government but the states themselves in protecting children from sexual contact with adults. The court has repeatedly referred to statutory rape statutes, which exist to my knowledge in every state, and none of those statutes require knowledge of the age of the victim. This is really just sort of a federal extension of that. I would also point out that the pornography that is an issue in this case, and I think the court has to take into consideration to some extent the facts of this case, the pornography that's an issue here is of the defendant filming himself having sex with a 16-year-old. So we have no realistic possibility that this defendant was doing something other than what the statute specifically prohibited, and if the court is going to undertake a broad brush constitutional challenge to a statute, I think it needs to take into consideration that fact. How would we do that in an overbreath challenge? How would you do that? How would you take account of it in an overbreath challenge? The whole point of an overbreath challenge is not to take account of it, so how would we do it? Well, then you go back to the broad brush philosophical question of the competing interests. I don't go back. It's just if it's an overbreath challenge, isn't that what we have to address? You do, but I think... So how should we go about addressing that? Then put it aside, Judge Barron, if you feel more comfortable putting it aside, and simply balance the two competing interests and what the Supreme Court itself has said about the context of this statute in comparison to another statute. Granted, the Supreme Court did not address an overbreath challenge to the statute, but it certainly laid the groundwork for that by talking about the surpassing interest of protecting children against sexual contact with minors, and I think that's where you start, Judge Barron. When you put that in one bucket and you see that it absolutely overflows, and you look at the other bucket, which is chilling effect on legitimate producers of adult pornography, and A, we have no evidence in this case. Granted, Judge Cayetta, maybe you don't need any, but it's certainly a factor to take into consideration. B, the logical influences of this, that there is, as Judge McAuliffe points out, there is already a federal statute that requires producers of films to verify the age of the victim, so producers of all kinds of pornography are on notice that they need to find out whether the victim is an adult or is a child. Well, that cuts the other way, it seems to me. That statute cuts the other way because, as I understand it, someone could fully comply with that statute, get a birth certificate, driver's license, interview the person, and then if it would be charged under the statute, and I think if they had complied with the statute, they would not get convicted under that, but I think you have to look at- That's not true. There would be no Ninth Circuit case if that were true. I'm talking about the statute requiring verification of the age. No, but Judge Cayetta's point is that even if you complied with the statute on the verification, you still could be, and that's the Ninth Circuit case. Right, and I'm talking about two different statutes, but I understand you're talking about our statute, which is the statute that punishes production of child pornography. What you have to do if you're going to do an over-breath analysis of this is you have to decide is there a realistic possibility that with that statute in effect, with the fact that it is the producer of child pornography who confronts the victim, is there a realistic possibility that a person on the margins, an actor on the margins, will chill the effect of a legitimate producer of adult pornography from producing that adult pornography simply because the child is on the margins, and I think your logical analysis has to say no, and it has to say no particularly when you take into consideration the heavy weighting of the other bucket, which is the protection of all the children in this country from people who produce child pornography and who have sex with them. Does the Court have other questions about that? Can I go to the what you were maybe getting at with your initial concessions that you were pointing out that were made? Is it the government's view that if the statute is overbroad on First Amendment grounds, I understand you don't think it is, but that if it is, the only remedy is to invalidate the entire statute? Forgive me, but I think that's Congress's job, and I think Congress has made fairly clear in several contexts of several statutes that it intends for knowledge of the age of the victim not to be an element. So you don't think that the fallback is available? I do not think so. I think that is a legislative function, and I think Congress has spoken very clearly on that issue. I think you're saying that the only remedy we could get is to declare the statute unconstitutional. If we agreed with the defender that this statute had a First Amendment chilling and was therefore unconstitutional, it seems to me from what you just said that we couldn't take out our legislative pens. That's correct. You cannot read the defense into it. You would have to declare it constitutionally overbreadth, which I believe would put you out on a limb in relationship to other circuits and also in relationship to the Supreme Court's speaking on this particular statute. But I don't think that's an issue you need to confront here. The reason I think you don't need to confront it is, first of all, because the defendant has conceded that it is not an element of the statute. Second, because all of the weight of authority against him, both in the interpretation of the statute and also in the constitutional question, is against him. And that there is no practical reason that this court should reach for that result when balancing the two interests, it weighs so heavily in favor of the children. If the court has questions about any of the other issues, I would be happy to address them. Otherwise, the government will urge the court to affirm. Thank you.